IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CONSTANCE BENNETT, et al.,
   Plaintiffs,

   v.         Case No. 2:04-CV-545
             JUDGE EDMUND A. SARGUS, JR.
             Magistrate Judge Norah McCann King

FOREST HEALTH SERVICES, LLC, et al.,
   Defendants.

## OPINION AND ORDER

  This matter is before the Court for consideration of the Defendants' Motion for Summary Judgment (Doc. #12).  For the reasons that follow, the motion is granted.

## I.

  Plaintiffs, Constance Bennett and Marcia Price, ["Plaintiffs"], bring this action on behalf of themselves and a purported class of individuals challenging the amendment of a health benefit plan administered by Defendant Forest Health Services, LLC.  Plaintiffs are employees of Defendant Barix Clinics of Ohio, Inc., a health care facility that offers weight-loss treatment programs, including bariatric surgery[1], to individuals diagnosed as morbidly obese.  Plaintiffs are employed at a Barix Clinic located in Groveport, Ohio.  The Plaintiffs are residents of the State of Ohio.  Defendants Barix Clinics of Ohio and Forest Health Services are Delaware corporations with their principal places of business in the State of Michigan.  Plaintiffs invoke this Court's

---

[1]Bariatric, or gastric by-pass, surgery is an invasive medical procedure which reduces the size of a person's stomach.

diversity jurisdiction, 28 U.S.C. § 1332.

Plaintiff Bennett began working for Defendant Barix in Groveport, Ohio on April 8, 2003. (*Complaint* at ¶ 29). Plaintiff Price began working for Defendant Barix, also at the Groveport, Ohio location, on February 17, 2003. (*Id.* at ¶ 33). Defendant Forest Health Services administers a health benefits plan for employees of Defendant Barix of Ohio. At the time Plaintiffs' employment began, the plan included a provision pursuant to which eligible employees of Barix could receive bariatric surgery. The plan, effective April 1, 2002, stated that Defendant Forest Health Services would cover 95% of expenses for gastric bypass surgery provided that the employee had completed one year of continuous full-time employment. (Forest Health Services Health Benefit Plan, attached to *Complaint* as Exhibit 1 at 87). Thus, an eligible employee would be responsible for 5% of the costs of the surgery. According to the plan in effect at the time, the employee's out-of-pocket maximum expense in this regard, not including a deductible, would be $1,000, so long as the provider was a Forest Health affiliate. (*Id.* at 30). The plan contains the following provision:

> Plan Modification, Amendment and Termination
> Forest Health Services, LLC reserves the right, at any time and from time to time (and retroactively, if necessary or appropriate to meet the requirements of ERISA), to modify, amend or terminate, in whole or in part, any or all of the provisions of the Plan. Any amendment to this Plan may be effected by written resolution adopted by decision of a designated individual. A Summary of Plan Change describing any changes or modifications to the Plan will be distributed to all Plan participants. However, a Plan change may be effective before notice is provided to participants.
>
> Coverage under this benefit program, or receipt of any benefit from the Plan, does not in any way affect your employment relationship with the company or your employer, or in any way limit the company or your employer's right to terminate your employment.

(*Id.* at 108).

Both Plaintiffs signed acknowledgment forms on their first day of employment regarding their receipt of an Employee Handbook and Summary Plan Description of Health Benefits Plan. (Exhibits 2, 5, 23, 25 attached to *Declaration of Renee Eggleston*). The acknowledgment form for the Health Benefits Plan states that the employee "understand[s] that Forest Health Services, LLC has the right to alter, amend or terminate the terms of this Health Benefits Plan at any time, in any manner, as it sees fit, and will notify participants of the plan in a timely manner." (Exhibits 5, 25, *Id.*).

Defendant Forest Health made various amendments to the plan in August 2003, January 2004 and April 2004. (*Eggleston Affidavit* at ¶¶ 11-13). The amendment effective April 1, 2004 made certain changes to the coverage for bariatric surgery. In particular, coverage decreased from 95% to 80%. (Exhibit 20 attached to *Eggleston Affidavit* at 10). The plan also states that a "separate $5,000 co-pay and $5,000 out-of-pocket maximum per individual" applies to each bariatric surgery. (*Id.*). Employees of Barix were notified of the April 1, 2004 amendment by a March 11, 2004 memorandum. (Exhibit 19 attached to *Eggleston Affidavit*).

Plaintiffs challenge the April 1, 2004 amendment to the plan, arguing that Defendants "provided false and misleading information to Plaintiffs regarding the benefits provided to employees of Forest Health." (*Complaint* at ¶ 24). Plaintiffs assert claims under Ohio law for promissory estoppel, breach of contract, breach of implied terms of good faith and fair dealing, misrepresentation, unjust enrichment, mistake and reformation.

Defendants move for summary judgment, arguing that Plaintiffs' claims are completely preempted by the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. §

3

1001, *et seq.*  Defendants further argue that, even under ERISA, any claim Plaintiffs present would fail as a matter of law.  Plaintiffs oppose the Defendants' motion for summary judgment.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party.  *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identifies a number of important principles in new era summary judgment practice.  For example, complex cases and cases involving state of mind

4

issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

### A.  ERISA Preemption

ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987), quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). The phrase "relate to" used in § 1144(a) is broadly interpreted so as to preempt a state law cause of action that has a "connection with or reference to" the plan. *Shaw v.*

*Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). Indeed, the Sixth Circuit has recognized that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA, Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citations omitted). Nevertheless, if a state law claim has only a "tenuous, remote or peripheral" effect on a plan, then it is not preempted. *Id.* In considering the issue of preemption, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id.* Thus, it is important for the Court to consider the remedy sought by Plaintiffs in determining whether their claims are preempted by ERISA.

Defendants contend that Plaintiffs' claims in this case, which are expressly brought under Ohio law, are preempted by ERISA. Plaintiffs disagree, arguing that the Defendants have mischaracterized the nature of at least one of their claims. According to Plaintiffs, the claim for misrepresentation is not preempted because Plaintiffs allege that they were fraudulently enticed to accept employment with Barix based on the promise of receiving the benefit of bariatric surgery at a minimal cost[2]. Plaintiffs argue that the facts at bar are like those in *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444 (6th Cir. 2003), where the Sixth Circuit found that certain state law claims were not preempted by ERISA.

In *Marks*, the Plaintiff held a senior management position with AT&T Capital Corporation. He was a participant in a severance plan, which entitled him to a substantial cash payment if he was terminated from employment without just cause. The plan provided that, in

---

[2]Plaintiffs apparently concede that the remaining state law claims are preempted by ERISA. Indeed, the Court concludes that they are completely preempted as they relate to the ERISA plan.

6

the event of a change of corporate control, he would be entitled to benefits if he suffered a

"qualifying termination" of employment within a certain period of time.  A change in corporate

control occurred but Marks continued to be employed in a substantially similar position to that

which he previously held.  Marks' job responsibilities and bonus calculations eventually changed

and he thereafter alleged that he had been constructively terminated.  Marks sought to exercise

his rights under the benefit plan but the claim was denied because the alleged constructive

termination did not occur by a certain date.  Marks filed suit claiming that he had been

fraudulently induced to remain employed by the new corporation.  Marks alleged that his claim

of constructive termination had been wrongfully, arbitrarily and capriciously rejected to avoid

paying him benefits which he believed he was entitled to receive under the plan.

The district court concluded that Marks' state law claims for breach of contract, fraud and

misrepresentation were preempted by ERISA.  The Sixth Circuit reversed this decision finding

that because"[Marks] seeks damages equaling the benefits he would have received under the

plan, it seems at first glance that his claims relate to an ERISA benefit plan.  However, a close

reading of Marks's complaint reveals that the reference to plan benefits was only a way to

articulate 'specific, ascertainable damages.'"  342 F.3d at 453, quoting *Wright v. General

Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001).  The Sixth Circuit concluded that the claims had

only a "tenuous, remote or peripheral" effect on the plan, *Id.*, citing *Cromwell*, 944 F.2d at 1276,

since the focus of Marks's complaint was that his job duties and compensation had been

significantly reduced without cause.  The court concluded that this claim, for breach of contract,

could not be preempted by ERISA.  The court also held that Marks could assert limited claims

for fraud and misrepresentation related to his initial acceptance of employment.  Marks had

7

purchased stock in the new corporation based on its assurances of continued employment. The Sixth Circuit held that this allegation "clearly [does] not relate to an ERISA plan." *Id.* at 453. The court found, however, that to the extent Marks claimed he was fraudulently induced not to exercise his rights under the severance plan, the claim clearly related to ERISA and was preempted. *Id.*

In the instant action, Plaintiffs argue that, as in *Marks,* their reference to the plan's bariatric surgery benefit "is only intended to be a means of articulating the specific ascertainable damages suffered by the Plaintiffs." (*Memorandum contra* at 11). Plaintiffs argue that reference to the plan is not even required to resolve Plaintiffs' claims. As further support for their theory, Plaintiffs rely on two Fifth Circuit decisions, *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5ᵗʰ Cir. 1996) and *Hobson v. Robinson*, 75 Fed. Appx. 949 (5ᵗʰ Cir. 2003).

In *Smith*, the Plaintiff, who worked for St. Luke's hospital, claimed that she was fraudulently induced into accepting employment with an affiliate hospital, Texas Children's, based on the promise that she would attain a higher position with a higher rate of pay, while maintaining all current benefits, including long-term disability benefits. After accepting the new position, Plaintiff went on long-term disability on account of multiple sclerosis. She was terminated from employment shortly thereafter. Because Plaintiff's diagnosis occurred prior to the insurance company's elimination period, it determined that Plaintiff's condition was pre-existing and she did not qualify for benefits. Plaintiff sued under theories of breach of contract and fraudulent inducement.

The Fifth Circuit held that, to the extent Plaintiff claimed entitlement to disability benefits, her claims were preempted by ERISA. The court recognized, however, that Plaintiff's

fraudulent inducement claim was not based solely on the denial of benefits. She also alleged that she gave up her accrued benefits with her prior employer in reliance on representations of her new employer. The court found that, to this extent, Plaintiff's fraudulent inducement claim was not preempted by ERISA because "[t]he ultimate question of Texas Children's liability for fraudulently inducing Smith to leave St. Luke's turns not on the quantum of benefits available at Texas Children's, but on the question whether Texas Children's misled Smith when it told her that she would keep what she had." *Id.* at 155-56.

Similarly, in *Hobson v. Robinson*, 75 Fed. Appx. 949 (5th Cir. 2003), the Fifth Circuit again held that state law claims for fraud and misrepresentation were not preempted by ERISA because the underlying conduct giving rise to the claims "occurred in the inducement of an ERISA policy, not in its administration." *Id.* at 952. There, the Plaintiffs cancelled a corporate health insurance policy based on Defendants' representations that its policy was comparable but available at a lower cost. After Plaintiffs' attempt to make claims on the policy were unsuccessful, they sued under theories of breach of contract, fraud and misrepresentation. The Fifth Circuit found the breach of contract claim preempted by ERISA but concluded the fraud and misrepresentation claims were not. The court observed that "the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan." *Id.* at 955. When a claim does not require interpretation or administration of an ERISA plan, it is not preempted by the statute. *Id.* at 955-56.

In the Court's view, the situations in the Fifth Circuit cases of *Smith* and *Hobson* and the Sixth Circuit case of *Marks* are not at all analogous to the situation at bar. In this case, Plaintiffs'

claim for fraudulent misrepresentation is intricately bound with the ERISA plan. Plaintiffs do not merely refer to the plan benefit of bariatric surgery as a way to articulate damages. On the contrary, the essence of Plaintiffs' fraudulent misrepresentation claim centers on the Defendant's decision to change the cost of the benefit. As such, the claim deals with the administration of the plan and clearly "relates to" ERISA. Unlike the claims in *Smith, Hobson,* and *Marks*, the Plaintiffs' claim ultimately turns on the quantum of benefits available to the Plaintiffs.

The Court is not persuaded by Plaintiffs' argument that they were allegedly enticed into working at Defendant's facility based on the promise that 95 % of the cost of bariatric surgery would be paid by Defendant. This indeed was the extent of the benefit at the time the Plaintiffs were hired. Plaintiffs do not contend that Defendants represented that this extent of coverage would never change. Moreover, documentary evidence adduced shows that Defendant expressly and unambiguously reserved the right to amend, modify or terminate the plan at any time. (Exhibit 1 at 108, attached to *Complaint*). In addition, both Plaintiffs signed acknowledgment forms for the Health Benefits Plan which state that the employee "understand[s] that Forest Health Services, LLC has the right to alter, amend or terminate the terms of this Health Benefits Plan at any time, in any manner, as it sees fit, and will notify participants of the plan in a timely manner." (Exhibits 5, 25, attached to *Declaration of Renee Eggleston*).

The Court concludes that Plaintiffs' claims, including the fraudulent misrepresentation claim, are intricately connected to the ERISA plan at issue and pertain to the quantum of benefits available to Plaintiffs. Accordingly, the claims are preempted by ERISA.

10

**B. Viability of an ERISA Claim**

Defendants argue that summary judgment is appropriate even recasting Plaintiffs' claims as challenging a denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B)[3]. In response, Plaintiffs do not rely on this provision but argue that they have a valid claim for breach of fiduciary duty under ERISA. According to Plaintiffs, Defendants provided materially false, inaccurate information regarding the future benefits to which Plaintiffs would be entitled under the plan. (*Memorandum contra* at 15-16). Defendants argue that any claim for breach of fiduciary duty would fail as a matter of law.

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1). In support of their position that they have a viable claim for breach of fiduciary duty in this case, Plaintiffs cite the Sixth Circuit's decision in *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439 (6th Cir. 2002). There, former employees of the Defendant tire company claimed that Defendant misrepresented the extent of benefits to employees who planned on taking early retirement. The court held that "an employer or plan administrator fails to discharge its fiduciary duty to act solely in the interest of the plan participants and beneficiaries when it provides, on its own initiative, materially false or inaccurate information to employees about the future benefits of a plan." *Id.* at 455.

---

[3]This provision provides for a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although Defendants correctly cite this provision as the next step in the analysis of Plaintiffs' claims, *see Ackerman v. Fortis Benefits Ins. Co.*, 254 F.Supp.2d 792 (S.D. Ohio 2003) (Rice, J.), Plaintiffs do not rely on it as providing a claim for relief, assuming their state law claims are preempted. Accordingly, the Court will not address the viability of any claim Plaintiffs may have under § 1132(a)(1)(B).

11

As the Defendants correctly point out, the benefit of bariatric surgery in this case was not a future benefit at the time Plaintiffs were hired.  Rather, it was a present benefit that could have been exercised in the future.  Thus, the Court finds the analysis in *James v. Pirelli Armstrong Tire Corp.* regarding breach of fiduciary duty, inapposite to the situation at bar.  In fact, the Sixth Circuit stated in *Pirelli* that there is no fiduciary duty to disclose proposed changes to or termination of a benefits plan before the change in action becomes official.  305 F.3d at 451.  In sum, to the extent Plaintiffs attempt to allege a claim for breach of fiduciary duty under ERISA, the Court concludes that the claim fails as a matter of law.

## IV.

In light of the foregoing, the Defendants' Motion for Summary Judgment (**Doc. #12**) is **GRANTED**.  This case is **DISMISSED**.  The Clerk is **DIRECTED** to enter Judgment in favor of the Defendants.

**IT IS SO ORDERED.**

8-2-005
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**